# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HERITAGE OPERATIONS GROUP, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FELICIA NORWOOD, et al., <br><br> Defendants. | Case No. 17-cv-8609 <br><br> Judge John Robert Blakey |
| ROCK RIVER HEALTH CARE, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PATRICIA R. BELLOCK., et al., <br><br> Defendants. | Case No. 18-cv-06532 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

In two related cases, Plaintiffs Heritage Operations Group, LLC and Rock River Health Care, LLC each sued the Director of the Illinois Department of Healthcare and Family Services (HFS), then Felicia Norwood and now Patricia Bellock, and the Administrator of the Centers for Medicare and Medicaid Services (CMS), Seema Verma. Heritage and Rock River (collectively, the Plaintiffs), each acting on behalf of numerous long-term care facilities that it operates in Illinois, allege that HFS violated federal Medicaid laws and their due process rights when it retroactively changed Medicaid's reimbursement rates for those facilities. The

1

facilities also allege that CMS acted unlawfully by approving the Illinois Medicaid plan under which HFS changed the reimbursement rates.

Heritage first brought suit in November 2017 and moved for a temporary restraining order (TRO) shortly thereafter. Defendants opposed the TRO and simultaneously moved to dismiss Heritage's complaint for failure to state a claim; on September 18, 2018, this Court granted Defendants' motion to dismiss without prejudice and denied Heritage's motion for a TRO. 17-cv-8609 [42] [43]. Heritage filed an amended complaint in October 2018. 17-cv-8609 [44].

On September 26, 2018, Rock River filed a complaint substantively identical to that of Heritage on behalf of a different set of nursing homes; the case was reassigned to this Court as related to Heritage's case. 18-cv-6532 [1] [4] [8].

On April 5, 2019, Defendant Bellock filed a motion to dismiss both Plaintiffs' amended complaints. 17-cv-8609 [60]; 18-cv-6532 [18]. Defendant Verma also filed a motion to dismiss Rock River's amended complaint. 18-cv-6532 [19]. As is discussed below, Count IV of Heritage's amended complaint—its only count against Verma— remains identical to that which this Court previously dismissed, and according to Heritage is "repled for purposes of appeal" only. 17-cv-8609 [44] ¶¶ 196−98. Accordingly, CMS and Heritage agreed to forego an additional round of briefing on Count IV. 17-cv-8609 [47] ¶ 3.

For the reasons explained below, this Court grants Defendants' motions with prejudice.

## I. The Complaints' Allegations[1]

This Court incorporates by reference, and presumes familiarity with, its prior opinion addressing Defendants' motion to dismiss in Heritage's case, 17-cv-8609 [43], and thus only briefly revisits the facts from which the parties' claims arise.

Plaintiffs operate long-term care facilities throughout Illinois. [4] ¶¶ 1–3. These nursing facilities receive per diem reimbursement for Medicaid beneficiaries from HFS, which administers the Illinois Medicaid program. *Id*. ¶¶ 4, 25. CMS administers Medicaid at the federal level. *Id*. ¶ 10.

Medicaid is a voluntary program, jointly funded by the federal and state governments, with the primary purpose of providing medical care for poor, elderly, and disabled individuals. *Id*. ¶¶ 7–8. States that choose to fund Medicaid must administer their programs in accordance with the authorizing legislation in Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq*., also known as the Medicaid Act. *Id*. ¶ 8. To participate in Medicaid, a state must submit its state plan for medical assistance to CMS for approval. *Id*. ¶ 9.

The Medicaid Act requires each state plan to include certain procedural and substantive elements. *Id*. ¶ 20. Relevant here, state plans must provide "a public process for determination of rates under the plan" that involves: (1) publishing proposed rates and the methodologies and justifications underlying the proposed rates; (2) giving providers, beneficiaries, and "other concerned State residents" a

---

[1] In this opinion, citations to docket numbers, unless otherwise noted, refer to filings in Rock River's case, No. 18-cv-6532. Because Plaintiffs' complaints contain virtually identical allegations about Defendants' practices, this Court, when possible, cites one complaint for a proposition that applies equally to both Plaintiffs.

3

"reasonable opportunity" to review and comment on the published materials; and (3) publishing the final rates and the methodologies and justifications underlying the final rates. *Id.* (quoting 42 U.S.C. § 1396a(a)(13)(A)). States must also provide public notice of any "significant proposed change" in their statewide methods and standards for setting payment rates. *Id.* ¶ 22 (quoting 42 C.F.R. § 447.205(a)).

Under Illinois' plan, the per diem reimbursement that nursing facilities receive from HFS consists of three separate components: (1) support cost; (2) nursing cost; and (3) capital cost. *Id.* ¶ 26. This case concerns the nursing component, also known as the direct care component. *See id.* ¶¶ 43−72. This component pays for: (1) the mean wages and benefits of all the licensed staff, registered nurses, licensed practical nurses, certified nursing assistants, social workers, and nursing supervisors who care for a resident; (2) direct care consultants; and (3) health care supplies used by or for a resident in a 24-hour period. *Id.* ¶ 27.

By the time the state reimburses nursing facilities, they have already provided their services to residents. *Id.* ¶ 28. At the time of reimbursement, Plaintiff facilities have generally already paid their nursing staff as well. *Id.* ¶ 29.

### A. The Nursing Component and On-Site Facility Reviews

HFS uses a Resource Utilization Group (RUGs) system to calculate reimbursement rates for nursing facilities.[2] 305 ILCS 5/5-5.2. Under this "resident-driven, facility-specific, and cost-based" methodology, HFS updates individual

---

[2] As it did in its previous motion to dismiss opinion, this Court takes judicial notice of the Illinois statutes and regulations that establish how HFS calculates reimbursement rates and how HFS audits nursing facilities. *See Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002).

4

reimbursement rates on a quarterly basis. *Id*. To enable these updates, Illinois facilities must submit Minimum Data Set (MDS) assessments to HFS quarterly. 89 Ill. Admin. Code § 147.315. MDS assessments provide information about the medical needs of each resident in a given facility, which allows HFS to classify each resident under a specific RUG code and establish a given facility's "case mix." *See id*. § 147.325. The facility's case mix then factors into HFS' calculation of the facility's nursing component, which "shall be the product of the statewide RUG-IV nursing base per diem rate, the facility average case mix index, and the regional wage adjustor." 305 ILCS 5/5-5.2(e-2).

HFS sometimes conducts on-site reviews to verify the accuracy of a facility's MDS data. *See* 89 Ill. Admin. Code § 147.340. HFS may randomly select the facilities it audits or may audit a facility based upon discretionary factors including, for example, a facility's "atypical patterns of scoring MDS items." *Id*. During a review, HFS informs the facility of "any preliminary conclusions regarding the MDS items/areas that could not be validated," and the facility then has an opportunity to present HFS with any documentation supporting its position. *Id*. § 147.340(o). A facility must provide all relevant documentation to the HFS team before the team finishes its on-site review. *Id*. § 147.340(p). If the review team needs more documentation to validate an area, they "shall identify the MDS item requiring additional documentation" and give the facility twenty-four hours to produce that information. *Id*. § 147.340(m).

5

If HFS concludes, based upon its review, that a facility submitted inaccurate MDS data, HFS reclassifies the necessary residents with correct RUG codes and determines if accurate data would change the nursing component of the facility's reimbursement rate. *Id.* § 147.340(s). HFS may change a facility's per diem reimbursement rate "retroactive to the beginning of the rate period" if recalculating the facility's nursing component decreases the per diem rate by more than one percent. *Id.* § 147.340(t). A facility may appeal any change to its specific reimbursement rate within 30 days of receiving notice of the change from HFS; a facility may not, however, rely upon additional documentation for the appeal that it failed to present to HFS during the original review. *Id.* § 147.340(u). HFS then has 120 days to address a facility's request for reconsideration; "individuals not directly involved" in the original review determine whether to make further adjustments to the facility's reimbursement rate. *Id.* § 147.340(v).

**B.     State Plan Amendment and Facility Audits**

In 2017, CMS approved an amendment to Illinois' state plan, effective retroactive to January 2016, that provided for the MDS on-site reviews and retroactive rate adjustments discussed above. [4] ¶ 82. Illinois codified that plan amendment in section 147.30 of its Administrative Code. *See id.* ¶ 82.

Throughout 2016 and 2017, HFS audited numerous Rock River and Heritage facilities pursuant to its authority under section 147.340. *Id.* ¶¶ 43−72. As a result of these audits, HFS significantly reduced the nursing component at each one of the

6

audited facilities. *See id*. These per diem rate changes "affected all residents in the facilities" retroactively. *Id*. ¶ 80.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

7

### III. Analysis

Plaintiffs assert four claims. Count I alleges that HFS violated Plaintiffs' substantive and procedural due process rights when HFS audited their facilities and retroactively adjusted the facilities' per diem reimbursement rates. [4] ¶¶ 100–22. Count II alleges that HFS violated the Medicaid Act and its implementing regulations by changing Plaintiffs' reimbursement rates. *Id*. ¶¶ 123–39. Count III, brought under 42 U.S.C. §§ 1983 and 1988, seeks declaratory and injunctive relief against HFS based upon its alleged violations of the Medicaid Act. *Id*. ¶¶ 112–27. Count IV alleges that this Court, pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 706, should set aside CMS' approval of Illinois' state plan amendment as "based on errors of law" and "unsupported by substantial evidence." *Id*. ¶¶ 154–56.

#### A. Count I: Due Process Violations

Count I alleges that HFS violated Plaintiffs' substantive and procedural due process rights by auditing the facilities and retroactively adjusting their per diem reimbursement rates. *Id*. ¶¶ 100–22. HFS argues that both the substantive and procedural portions of Count I fail because Plaintiffs cannot identify any protected property interest with which HFS interfered. [18] at 2–4. Like its prior opinion, this Court agrees with HFS, and finds that Plaintiffs do not possess a protected property interest in its per diem Medicaid reimbursement rates.

Protected property interests must arise from an independent source, such as state or federal law. *See Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008). For a property interest to merit due process protection, the

8

plaintiff must have "a legitimate claim of entitlement" to that property interest, not simply "a unilateral expectation of it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). And the interest itself must be "substantive rather than procedural in nature." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018).

This Court has already addressed many of the cases upon which Plaintiffs rely in its previous motion to dismiss opinion. *See* 17-cv-08609 [43] at 8–9 (discussing *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815 (7th Cir. 2017); *Tekkno Laboratories, Inc. v. Perales*, 933 F.2d 1093 (2d Cir. 1991); *Oberlander v. Perales*, 740 F.2d 116, 120 (2d Cir. 1984); and *Yorktown Med. Lab., Inc. v. Perales*, 948 F.2d 84 (2d Cir. 1991)). In addition to these cases, Plaintiff fail to identify any controlling case law to support their claim to a protected property interest, and the cases that they do identify remain distinguishable.

First, Plaintiffs rely upon *White Plains Nursing Home v. Whalen*, 385 N.Y.S.2d 392 (N.Y. App. Div. 1976), in which the court found the plaintiff nursing facility held a property right in Medicaid rates. But there, the state health commissioner attempted to recoup past overpayments for services performed by the facility at a rate previously certified by the State. *Id*. at 393–94. But unlike the *White Plains* plaintiffs, the Plaintiffs do not allege that they have already received payments from HFS, nor that they relied upon a rate previously certified by the State. *See generally* [4]. Rather, the relevant regulation explains that a facility's rate "shall be subject to change" based upon MDS data recalculations. 89 Ill. Admin. Code § 147.340(t). *See also St. Joseph's Hosp. Health Ctr. v. Dep't of Health of State of N.Y.*, 677 N.Y.S.2d

9

194, 204 (N.Y. App. Div. 1998) ("There is no protected property interest in those Medicaid payments that may be adjusted at a later time, either as the result of an audit or a statutory adjustment to the rate"). Accordingly, this Court does not find the *White Plains* court's decision applicable.

Second, Plaintiffs rely upon *Family Rehabilitation, Inc. v. Azar*, No. 3:17-CV-3008-K, 2018 WL 3155911, *4 (N.D. Tex. 2018), in which the court held that the plaintiff facility held a property interest in Medicare payments for services rendered. [21] at 5. But there, a third-party contractor used statistical sampling during a "post-payment review" to determine that CMS overpaid the facility. Again, the case before this Court does not involve a post-payment review, nor a third-party review of CMS overpayments; rather, the Illinois MDS review process expressly permits retroactive rate adjustments based upon MDS data reviews. *See also Alpha Home Health Solutions, LLC v. Sec'y of U.S. HHS*, 340 F. Supp. 3d 1291, 1303 (M.D. Fla. 2018) (finding that the contingent nature of Medicare payments subject to audit "makes clear that a health care provider lacks a constitutionally protected interest in an overpayment of federal funds."). In short, as this Court previously noted, HFS did not retroactively change a duly promulgated reimbursement rate for payments already made; instead, "it retroactively changed a reimbursement rate contingent upon quarterly patient data that was subject to MDS audits and resulting adjustments per the terms of the Illinois state plan," and thus did not trigger a legitimate claim of entitlement. 17-cv-0609 [43] at 9.

In addition to the above cases, Plaintiffs cite to three cases that discuss whether Medicaid reimbursements can be "used as a security interest" that can be "transferred to others as payment for a debt." [21] at 5 (citing *DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes*, 384 F.3d 338 (7th Cir. 2004); *In re Woodstock Associates I, Inc.*, 120 B.R. 436 (N.D. Ill. 1990); *Credit Recovery Systems LLC v. Heike*, 158 F. Supp. 2d 689 (E.D. Va. 2001)). Simply put, none of these cases pertain to whether plaintiffs maintain a constitutionally protected entitlement for purposes of the due process clause.

Absent any authority to support the facilities' claim to a protected property interest in their per diem Medicaid reimbursement rate, Count I fails to state a claim. Accordingly, this Court dismisses Count I.

### B. Counts II, III, & IV

Counts II through IV fail in conjunction with Count I. First, Count II of Heritage's amended complaint contains no substantive changes from its original complaint. *Compare* 17-cv-8609 [44] ¶¶ 165−81 *with* 17-cv-8609 [1] ¶¶ 84−92. Heritage's amended complaint notes that it repleads Count II solely for purposes of appeal. *See* 17-cv-8609 [44] ¶¶ 165−81. And Rock River's Count II is identical to that of Heritage's original and amended complaints. *See* [4] ¶¶ 123−139. Accordingly, this Court dismisses Count II for the reasons stated in its previous opinion, 17-cv-8609 [43] at 10−13.

Second, because this Court has dismissed Counts I and II, Plaintiffs cannot obtain the declaratory or injunctive relief requested by Count III. For this reason,

and for the detailed reasons explained in its previous opinion, this Court dismisses Count III. *See* 17-cv-8609 [43] at 13−16.

Finally, Plaintiffs' response, [21] at 13, moves to dismiss Defendant Verma and Count IV—in Rock River's case—pursuant to Federal Rule of Civil Procedure 41(a). Accordingly, this Court grants Plaintiffs' motion to dismiss Count IV and Defendant Verma from the Rock River case. Further, Count IV of Heritage's amended complaint remains identical to the claim this Court already dismissed in its previous order, [1] ¶¶ 108−110, and states that it is "repled for purposes of appeal" only. [44] ¶¶ 196−98; *see also* [47] ¶ 3 (representing that Plaintiffs' counsel confirmed "no further briefing is needed or expected on plaintiff's claim against the federal defendant."). Accordingly, this Court dismisses Count IV of Heritage's amended complaint for the reasons explained in its previous opinion. 17-cv-8609 [43] at 19−20.

### IV. Leave to Replead

Although, in general, Federal Rule of Civil Procedure 15(a) states that trial courts "should freely give leave [to amend] when justice so requires," that command can be outweighed by factors such as "undue delay, bad faith, and futility." *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 689 (7th Cir. 2014). Here, this Court finds that the record does not warrant giving Plaintiffs leave to replead, due to futility and Heritage's multiple attempts to amend, without success (and the substantively identical allegations contained in Rock River's amended complaint). Accordingly, this Court dismisses Counts I through IV of both Heritage and Rock River's amended complaints with prejudice.

## V. Conclusion

For the reasons explained above, this Court grants Defendants' motions to dismiss each Plaintiff's complaint, [18] [19], with prejudice. All dates and deadlines are stricken. Civil cases terminated.

Dated: August 12, 2019

							_____
							John Robert Blakey
							United States District Judge